**UNITED STATES U.S. DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

BAKEMARK USA LLC,

    Plaintiff,

-against-

BRIAN NEGRON, JOSE NEGRON JR, BAKERS DEPOT LLC, and NF TRANSPORTATION LLC,

    Defendants.

Case No. _____

**AFFIDAVIT OF JEFF ALLEN IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND EXPEDITED DISCOVERY**

STATE OF TEXAS    )
                      ) ss.:
COUNTY OF HARRIS  )

Jeff Allen duly sworn, deposes and says:

1. My name is Jeff Allen. I am over eighteen years of age, of sound mind, and am competent in all respects to make this declaration.

2. I am Senior Vice President - Branch Development of Bakemark USA LLC ("BakeMark") and have been employed by BakeMark in that role since August 2013. Except where otherwise stated, I make this affidavit based on my personal knowledge, including based on BakeMark's books and records. I submit this Affidavit in support of Plaintiff's Motion for a Temporary Restraining Order, Preliminary Injunction, and Expedited Discovery.

**SIDCO PURCHASE**

3. As part of its growth strategy, on or around April 2, 2021, BakeMark entered into an Agreement for Sale and Purchase of Assets (the "Sidco Sale Agreement") with Sidco Food Distribution Corporation ("Sidco"), a wholesale bakery supply business, for █████████ I was part of the strategy for this deal.

4.  A true and correct copy of the Sidco Sale Agreement, entered into and effective as of April 2, 2021, is attached hereto as **Exhibit A**.

5.  Sidco was owned by Jose Negron, Sr. and his wife, Wilma Negron (the "Sellers"). Their two sons, Brian Negron and Jose Negron, Jr. (the "Individual Defendants") worked at Sidco before and up to the sale. Upon information and belief, the day-to-day operations of Sidco before the sale were primarily run by the Individual Defendants.

6.  Sidco was an attractive acquisition for BakeMark because it had an established customer base in New York, New Jersey, and the surrounding areas. In fact, the acquisition of Sidco's extensive customer base was a key driver behind the ▮▮▮▮ purchase price. BakeMark believed that the acquisition of Sidco would expand its footprint in New York city and enable it to reach new categories of customers.

7.  BakeMark memorialized this expectation in its sale agreement, with such provisions as:

    - § 1.4(b), conveying "[a]ll information regarding the accounts and customers of [Sidco] who have ordered goods . . . since January 1, 2018" to BakeMark
    - § 1.4(c) conveying all of Sidco's "trade secrets, brands, recipes, bills of materials . . . and confidential information."

Exhibit A.

8.  The terms of the sale likewise included a "Noncompetition and Nonsolicitation Agreement under which the Sellers agreed not to:

    - § 1.1 "directly or indirectly engage in, or have any interest in, any person, firm, corporation, partnership, limited liability company, business or organization . . .

that engages in any business or activities that are or may be in competition" with BakeMark; and

- § 1.2 "directly or indirectly contact, solicit or otherwise communicate with . . . , any employees, contractors, licensees, suppliers, vendors, distributors, customers or others doing business with the [Sidco] or [that] have done business with the [Sidco] during the 24-month period prior to" the sale

Exhibit A.

9. In addition, Sellers agreed that after the acquisition closed, all Confidential Information to which they had access would be used solely for the benefit of BakeMark and for no other purpose.

10. As part of the transition, BakeMark hired Jose Negron Sr. as a consultant for a few months to attempt to transition the business as smoothly as possible from Sidco to BakeMark.

11. BakeMark and Sellers also negotiated for BakeMark to employ Defendants Brian Negron and Jose Negron, Jr after the sale. BakeMark ultimately offered both Individual Defendants jobs as General Managers at its distribution facility in New York, New York (the "New York Facility").

12. BakeMark expected and bargained for the Individual Defendants to continue and grow their relationships with their old Sidco customers on behalf of BakeMark.

13. Specifically, building customer relationships was an integral part of the General Manager role, and part of why BakeMark bargained to keep the Individual Defendants on. Their relationships with customers they work with at Sidco was a key part of ensuring BakeMark retained as many customers and as much business as possible once BakeMark purchaed Sidco.

- 4 -

14. When I was the Individual Defendants' supervisor, they told me they were trying to get orders and develop customers for BakeMark. Based on their representations, I believed that they were spending a significant amount of time developing BakeMark's relationships with the foregoing customers, purportedly on BakeMark's behalf.

15. Based on my understanding of the results of the investigation BakeMark conducted into the conduct of the Individual Defendants, I believe they were preparing to set up a competing company, and steal the customers and information we purchased from their old company as part of the ███████ deal with their parents.

- 5 -

Dated: Houston, Texas

3/15/2023

_____
NAME

Jeff Ausn

Sworn to before me this 15
day of March,
2023.

_____
Notary Public

DULCE JIMENEZ
Notary Public, State of Texas
ID # 13198855-3
Commission Expires
APRIL 25, 2023