UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BAKEMARK USA LLC,

                Plaintiff,

-against-

BRIAN NEGRON, JOSE NEGRON JR,
BAKERS DEPOT LLC, and
JB FREIGHT LLC,

                Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _07/12/2024_

23 Civ. 2360 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiff, BakeMark USA LLC ("BakeMark"), is a baking-products distributor that previously employed Brian Negron and Jose Negron, Jr. Compl. ¶¶ 19, 26, ECF No. 1. BakeMark alleges that Defendants, Negron, Negron, Jr., Bakers Depot, LLC, and JB Freight LLC,[1] established a competing baking-products distribution business by misappropriating BakeMark's trade secrets and violating non-compete clauses in their employment agreements with BakeMark. See id. ¶¶ 109–204. BakeMark moves for a preliminary injunction against Negron, Negron, Jr., and JB Freight LLC.[2] See Pl. Mot., ECF No. 8. Following expedited discovery and briefing, the Court determined that an evidentiary hearing was necessary to resolve BakeMark's motion and referred the motion to the Honorable Barbara C. Moses. ECF Nos. 83–84. Judge Moses held the hearing on August 28 and 29, 2023. See Dkt. Entry 8/28/23; Dkt. Entry 8/29/23.

---

[1] JB Freight LLC previously did business as NF Transportation LLC, and was originally sued under that name. See Compl.; R&R at 2, ECF No. 112.

[2] BakeMark also moved for a preliminary injunction against Bakers Depot, LLC, which declared bankruptcy three days before the preliminary-injunction hearing. Accordingly, litigation involving Bakers Depot, LLC is stayed, and Judge Moses made no findings as to Bakers Depot, LLC in the R&R. See R&R at 2 n.1, 3–4.

Before the Court is Judge Moses's Report and Recommendation (the "R&R"), dated January 12, 2024, which recommends that BakeMark's motion be denied for failure to demonstrate irreparable harm. R&R at 1–2, ECF No. 112. BakeMark timely objected to the R&R. Pl. Objs., ECF No. 117. For the reasons stated below, the Court OVERRULES BakeMark's objections and ADOPTS the R&R.

## BACKGROUND[3]

In the R&R, Judge Moses recommended that BakeMark's motion be denied. Judge Moses first determined that a heightened standard should apply because BakeMark sought an injunction "that provides it substantially all the relief it seeks in the litigation, and that cannot be meaningfully undone in the event that the enjoined party prevails at trial on the merits." R&R at 27 (quoting *JTH Tax, LLC v. Agnant*, 62 F.4th 658, 667 (2d Cir. 2023)) (cleaned up). Next, Judge Moses held that BakeMark had shown a strong likelihood of success on the merits as to its breach-of-contract and trade-secrets claims against Brian Negron, and its trade-secrets claims against JB Freight, but had not met the standard for any of its claims against Jose Negron, Jr. *Id.* at 29–38. However, Judge Moses held that BakeMark had not made a strong showing of irreparable harm, finding that the loss of customer relationships and goodwill could be remedied by monetary damages and that BakeMark had unreasonably delayed in seeking injunctive relief, undercutting its claims of urgency. *Id.* at 38–46.

BakeMark objects on three grounds. First, BakeMark argues that it should not have been subjected to a heightened standard. Pl. Objs. at 9–11. Second, BakeMark contends that it was likely to succeed against Jose Negron, Jr., who was part of his brother Brian's scheme. *Id.* at 11–

---

[3] The Court presumes familiarity with the facts and procedural history of this action as detailed in the R&R. *See* R&R at 2–26.

2

13. And third, BakeMark contests Judge Moses's findings on irreparable harm because (1) she considered the company's operations as a whole, rather than only its New York branch, and (2) the delay in filing for a preliminary injunction was explained by Defendants' efforts to obscure their misconduct. *Id.* at 13–15.

## LEGAL STANDARD

### I. Objections

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party makes specific objections, the court reviews *de novo* those portions of the R&R to which objection is made. *Id.*; Fed. R. Civ. P. 72(b)(3). However, "when a party makes only conclusory or general objections, or simply reiterates [her] original arguments," the court reviews the R&R strictly for clear error. *Wallace v. Superintendent of Clinton Corr. Facility*, No. 13 Civ. 3989, 2014 WL 2854631, at *1 (S.D.N.Y. June 20, 2014) (citation omitted); *see also Bailey v. U.S. Citizenship & Immig. Servs.*, No. 13 Civ. 1064, 2014 WL 2855041, at *1 (S.D.N.Y. June 20, 2014) ("[O]bjections that are not clearly aimed at particular findings . . . do not trigger *de novo* review."). Moreover, "a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not." *United States v. Gladden*, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019) (citation omitted).

The Court may adopt those portions of the R&R to which no objection is made "as long as no clear error is apparent from the face of the record." *Oquendo v. Colvin*, No. 12 Civ. 4527, 2014 WL 4160222, at *2 (S.D.N.Y. Aug. 19, 2014) (citation omitted). An R&R is clearly erroneous if the reviewing court is "left with the definite and firm conviction that a mistake has

been committed." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (citation omitted); *see also*

*Travel Sentry, Inc. v. Tropp*, 669 F. Supp. 2d 279, 283 (E.D.N.Y. 2009).

    II.    <u>Preliminary Injunction</u>

To obtain a preliminary injunction, a party must ordinarily establish

> (1) irreparable harm; (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party; and (3) that a preliminary injunction is in the public interest.

*New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) (quotation marks and citation omitted). When a movant seeks a "mandatory" injunction that changes the status quo, or where it requests an injunction seeking "substantially all the relief" that it would receive in litigation, a movant is held to a heightened standard, in which case "the movant must show a 'clear' or 'substantial' likelihood of success on the merits, and make a 'strong showing' of irreparable harm, in addition to showing that the preliminary injunction is in the public interest." *Id.* (citations omitted).

## DISCUSSION

    I.    <u>Objection 1: Preliminary Injunction Standard</u>

BakeMark first argues that Judge Moses should not have subjected it to the heightened preliminary injunction standard. *See JTH Tax*, 62 F.4th at 667. BakeMark contends that the injunction does not provide all of its requested relief, because it "also seeks monetary damages arising from several tort claims that it asserts against Defendants." Pl. Objs. at 8. But, the complaint seeks only injunctive relief. *See* Compl. at 42–44. And, BakeMark states that, because its employment contracts of Negron and Negron, Jr. include enforceable arbitration clauses, any damages claims will be addressed in arbitration. *Id.* ¶¶ 1, 38, 54–58. Therefore,

"the issuance of an injunction will render a trial on the merits largely . . . meaningless." *Tom Doherty Assocs., Inc v. Saban Ent., Inc.*, 60 F.3d 27, 35 (2d Cir. 1995).

BakeMark next argues that any injunction could be meaningfully undone through monetary damages. A "wrongfully imposed injunction that would effectively put [the enjoined party] out of business" cannot be "meaningfully undone." *JTH Tax*, 62 F.4th at 667. BakeMark claims that the injunction would apply only to Defendants' business in six states in the Northeast and would not, therefore, put Defendants out of business. Pl. Objs. at 9. But, whether an injunction could be undone is a practical question about the actual impact of the injunction on Defendants' business model as currently constructed—not, as BakeMark argues, a hypothetical one in which Defendants' business could succeed if they substantially changed their operations. *See JTH Tax*, 62 F.4th at 667–68 (collecting cases); *Dexter 345 Inc. v. Cuomo*, 663 F.3d 59, 63 (2d Cir. 2011) (holding that a business with a "long history of operation" could "extrapolate damages" in the case of wrongful closure, unlike a "recently established business"). BakeMark offers no evidence to support its claim that Defendants' business could succeed if the requested injunction was imposed.

Therefore, Judge Moses correctly required BakeMark to meet the heightened standard, and BakeMark's first objection is OVERRULED.[4]

II.     Objection Two: Likelihood of Success as to Jose Negron, Jr.

BakeMark contends that it showed a likelihood of success as to its breach-of-contract and misappropriation claims against Jose Negron, Jr., whom it claims had "numerous" connections with Brian Negron and JB Freight. Pl. Objs. at 11–13. But, connections alone do not create

---

[4] In the end, the disagreement is almost entirely academic. Judge Moses found that, whether or not she applied a heightened standard, BakeMark did not demonstrate irreparable harm or, as to Negron, Jr., a likelihood of success. R&R at 34; 42–46. The Court agrees with Judge Moses's conclusions under both standards of proof.

5

liability: BakeMark must show that Negron, Jr. took actions to breach his contract or to misappropriate trade secrets. *See Ritani, LLC v. Aghjayan*, 880 F. Supp. 2d 425, 451 (S.D.N.Y. 2012) (holding that "the wrongdoing of each defendant must be delineated" beyond a broad "allegation of control"); *Deflora Lake Dev. Assocs., Inc v. Park*, 654 F. App'x 9, 10 (2d Cir. 2016) (requiring a plaintiff to show "breach of contract by the defendant"). The Court agrees with Judge Moses that BakeMark failed to provide this evidence. R&R at 33–34, 38.

BakeMark first argues that Negron, Jr. breached his employment contract with BakeMark because of his work at JB Freight. Pl. Objs. at 12. Judge Moses found that Negron Jr.'s work for JB Freight "was limited to troubleshooting mechanical issues with the company's trucks." R&R at 33. BakeMark has not demonstrated—nor does it now argue—that this de minimis troubleshooting activity constituted competitive work in violation of the agreement. *Id.* at 33–34. Instead, it states that Negron, Jr.'s "role at JB Freight required him to engage in the same activities he performed as Associate General Manager at BakeMark—overseeing trucks and supervising employees." Pl. Objs. at 12. The record evidence does not support BakeMark's broad assertion that Negron, Jr. was responsible for JB Freight's truck fleet. *See* Hr'g Tr. at 147:25–148:2, 175:21–176:1, 181:11–23, ECF No. 104.[5] Therefore, Judge Moses appropriately found that Negron, Jr. did not breach his employment contract through his work for JB Freight.

BakeMark next contends that Negron, Jr. must have played a part in his brother's hiring of five former BakeMark employees, again in violation of his employment contract with BakeMark. Pl. Objs. at 12. But, this allegation is not supported by the record, which shows that

---

[5] Although Judge Moses stated that Negron, Jr. "displayed a remarkably fuzzy memory for dates throughout his testimony," R&R at 17, she credited his testimony about his responsibilities at JB Freight. *Id.* at 33–34 (citing Hr'g Tr. at 175:21–176:1). A "district judge should normally not reject a proposed finding of a magistrate judge that rests on a credibility finding without having the witness testify before the judge." *Carrion v. Smith*, 549 F.3d 583, 588 (2d Cir. 2008) (quoting *Cullen v. United States*, 194 F.3d 401, 407 (2d Cir. 1999)).

Negron, Jr. did not hire or contact any restricted employees, *see* Hr'g Tr. at 184:20–185:6, and lacked the authority to hire, supervise, or fire JB Freight's employees, *id.* at 176:2–14, 181:11–23.

Finally, BakeMark argues that a BakeMark employee "improperly downloaded a comprehensive report" related to BakeMark's Tampa, Florida branch, which it contends must have been passed to the employee's "longtime friend [Negron, Jr.] to assist with the growth of Bakers Depot Miami," where Negron, Jr. works. Pl. Objs. at 12–13. Misappropriation can often only be proven by circumstantial evidence. *Q-Co Indus., Inc. v. Hoffman*, 625 F. Supp. 608, 618 (S.D.N.Y. 1985); *see* R&R at 37. But, BakeMark's extensive causal chain attempts to connect Negron, Jr. based on a friendship—not uncommon between former work colleagues—and his employment in the state of Florida. Judge Moses correctly found that these hints of impropriety are insufficient to satisfy BakeMark's burden on its preliminary-injunction motion. *See* R&R at 38.

Accordingly, BakeMark's objection as to Negron, Jr. is OVERRULED.

III.     Objection Three: Irreparable Harm

Irreparable harm is the "single most important prerequisite for the issuance of a preliminary injunction." *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999) (citation omitted). "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (citation omitted). BakeMark objects to Judge Moses's recommendations as to irreparable harm for two reasons.

First, BakeMark argues that Judge Moses erred in analyzing the impact of Defendants' business on BakeMark's operations as a whole, as opposed to BakeMark's New York branch

7

alone.  But, BakeMark cites no record evidence for its assertions that it "operates on a region-by-region, branch-based system," and that the damage to one branch "cannot be calculated based on or attributed to the larger company as a whole."  Pl. Objs. at 13–14.  The evidence does not indicate that the New York branch operates in a silo; rather, it shows that the New York branch was governed by BakeMark's corporate officers.  Joint Statement of Facts ("JSOF") ¶ 1, ECF No. 95.  The record further demonstrates that BakeMark sells its products "throughout the continental United States and Canada," has extensive sales records, and is "the recognized market leader in the baking industry."  *See* R&R at 42 & n.30.  Judge Moses, therefore, did not err in concluding that BakeMark is "in a relatively good position to quantify its losses."  R&R at 42.  Where, as here, a plaintiff is in a "strong position in a highly competitive market" and possesses the records to quantify its damages as to goodwill, the Second Circuit has instructed district courts not to automatically assume irreparable injury in a covenant-not-to-compete case.  *JTH Tax*, 62 F.4th at 673; *see Baker's Aid v. Hussmann Foodservice Co.*, 830 F.2d 13, 15–16 (2d Cir. 1987).

Second, BakeMark argues that its delay in seeking a preliminary injunction was not unreasonable.  It first contends that the June 2022 email first indicating the existence of possible infringement did not trigger its obligation to act.  Pl. Objs. at 15.  But, the R&R did not hinge its finding of delay on this date.  Indeed, Judge Moses acknowledged that the June 2022 email conveyed only "rumors," but found that by "the early [f]all of 2022," BakeMark knew the name of the competing business and had received reports from sales representatives as to infringement.  R&R at 44.  BakeMark next contends that the remaining delay is excusable because it was "using the time to investigate the scope of wrongdoing."  Pl. Objs at 16.  This is belied by the record: BakeMark knew more details about Defendants' actions by August 1, 2022, but did not

8

hire an investigator until December 21, 2022—an unexplained delay of more than four months. R&R at 44–45. And, even after the investigator confirmed the infringement with photographic evidence by January 2023, BakeMark failed to act for more than another two months. *Id.* at 45.

In response, BakeMark cites cases involving delays between three and sixteen months while the party seeking a preliminary injunction was investigating the existence or extent of misconduct. Pl. Objs. at 16. These cases are inapposite. Judge Moses did not fault BakeMark for the time it took to investigate the existence or the extent of misconduct. Instead, she correctly penalized BakeMark for the time it waited to begin its investigation, and the time that it "dawdled" once it realized the extent of the alleged misconduct. *See* R&R at 45–46; *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 277 (2d Cir. 1985) ("[Plaintiff's] failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." (cleaned up)); *Livery Round Table, Inc v. N.Y.C. FHV & Limousine Comm'n*, No. 18 Civ. 2349, 2018 WL 1890520, at *9 (S.D.N.Y. Apr. 18, 2018) (holding that an unexplained "delay of about three months undercuts a showing of immediate and irreparable injury").

Accordingly, Judge Moses did not err in determining that BakeMark had failed to demonstrate irreparable injury, and BakeMark's objection is OVERRULED.

## CONCLUSION

For the foregoing reasons, BakeMark's objections are OVERRULED, and the R&R is adopted in its entirety. BakeMark's motion for a preliminary injunction is DENIED. By **August 1, 2024**, the parties shall file a joint letter providing a status update.

SO ORDERED.

Dated: July 12, 2024
New York, New York

_____
ANALISA TORRES
United States District Judge